UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **RIGID CONSTRUCTORS L L C** | **CASE NO. 6:22-CV-06234** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **MITSUI SUMITOMO MARINE MANAGEMENT U S A INC ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion to Remand. (Rec. Doc. 14). Defendants opposed the Motion (Rec. Doc. 26), and Plaintiff replied (Rec. Doc. 34). The Court held oral argument on March 8, 2023 (Rec. Doc. 44), and the parties filed supplemental briefs (Rec. Doc. 40; 41; 42). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that Plaintiff's Motion be denied.

### Factual Background

Plaintiff, Rigid Constructors, LLC, filed suit in state court on November 30, 2022 against its purported insurers, Mitsui Sumitomo Marine Management (USA), Inc., Mitsui Sumitomo Insurance USA, Inc., US Specialty Insurance Company,

Continental Underwriters Ltd., and Subscribing Underwriters at Lloyd's London, for breach of contract following salvage operations for a sunken barge. (Rec. Doc. 1-2). This insurance dispute involves a policy issued to a Rigid Constructors entity, CF, LLC, in March 2022. (Rec. Doc. 14-2, p. 2-3). The Mitsui Defendants removed the case to this Court on December 23, 2023, on the grounds of diversity jurisdiction. (Rec. Doc. 1). The parties dispute diversity. Plaintiff maintains that Continental Underwriters is a properly joined and served non-diverse Louisiana entity which destroys diversity jurisdiction. Defendants maintain that Continental Underwriters is not the proper party defendant and that Continental Underwriters was improperly joined, such that its citizenship is irrelevant to the diversity analysis.

## Law and Analysis

### I. Law applicable to removal and remand.

The federal district courts have original jurisdiction over cases in which the parties are diverse in citizenship and the amount in controversy exceeds $75,000, pursuant to 28 U.S.C. §1332. 28 U.S.C. §1441 and §1446 provide the procedural mechanism by which a party may remove a matter from state court to a federal district court.

Generally, upon the filing of a motion to remand, the removing party bears the burden to prove that federal jurisdiction exists. *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1408 (5th Cir. 1995). Thus, the removing Defendants, as the party seeking to

invoke federal diversity jurisdiction under §1332, bear the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000. *Garcia v. Koch Oil Co. of Texas Inc.,* 351 F.3d 636, 638 (5th Cir. 2003). Diversity is the disputed issue in this case.

## II. Whether the parties are diverse.

Plaintiff, Rigid Constructors, is a Louisiana limited liability company whose members are CF, LLC and Settoon Acquisition, LLC, both Louisiana limited liability companies. (Rec. Doc. 1-2, ¶1; Rec. Doc. 22). A limited liability company is a citizen of every state in which any member of the company is a citizen. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). Therefore, "the citizenship of a LLC is determined by the citizenship of *all* of its members," *Id.* (emphasis added). Thus, the diversity analysis for an LLC requires a determination of the citizenship of every member of the company. *Id.* See also *Wright v. JPMorgan Chase Bank, NA*, No. 09-cv-0482, 2009 WL 854644, at *1 (W.D. La. Mar. 26, 2009) ("If the members are themselves partnerships, LLCs, corporations or other form of entity, their citizenship must be alleged in accordance with the rules applicable to that entity, and the citizenship must be traced through however many layers of members or partners there may be."). Plaintiff did not identify the members of CF or Settoon. Thus, the Court cannot establish a definitive citizenship for Rigid Constructors but assumes for purposes of this analysis that it is a citizen of Louisiana.

3

Initially, the removing Defendants alleged that Continental Underwriters Ltd., LLC was renamed Cull, LLC and is owned by another Louisiana limited liability company, Fidelis Group Holdings, LLC ("Fidelis LLC"); however, the removing Defendants failed to identify the members of Fidelis LLC.

Since filing the Notice of Removal, in opposition to Plaintiff's Motion to Remand, Defendants assert that Continental Underwriters is not the real party in interest, its assets and trade name having been purchased in December 2020 by CRC Ins. Services Inc., an Alabama corporation with its principal place of business in Alabama. (Rec. Doc. 26-5). According to the affidavit of H. Elder Brown, CEO of Continental Underwriters at the time of the purchase, Continental Underwriters Ltd., LLC had ceased operations in December 2020 at the time of its sale to CRC. (Rec. Doc. 26-5, ¶12). When Continental Underwriters sold its name and assets to CRC in 2020, a second company, CULL, LLC, was created to administer the outstanding policies/claims established prior to the sale. In other words, policies written or administered after the 2020 sale, such as the March 2022 policy issued to Rigid Constructors, would fall into the CRC bucket, rendering CRC the proper entity. (See Rec. Doc. 44, p. 33-34, referencing 26-5, 34-2, and 34-4). CRC being a diverse defendant, the Court finds remand is not warranted; however, the question remains of the propriety of Continental Underwriters' joinder, assuming *arguendo*

Continental Underwriters was correctly identified.[1] For the following analyses, the Court assumes Continental Underwriters is a non-diverse defendant.

### III. Whether Continental Underwriters was improperly joined.

Defendants contend that Continental Underwriters, presumed to be non-diverse in this instance, was improperly joined. "When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper." *Smallwood v. Illinois Cent. R. Co.,* 385 F.3d 568, 576 (5th Cir. 2004) (en banc). "To demonstrate improper joinder of resident defendants, the removing defendants must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Gasch v. Hartford Acc. & Indem. Co.,* 491 F.3d 278, 281 (5th Cir. 2007), quoting *Crockett v. R.J. Reynolds Tobacco Co.,* 436 F.3d 529, 532 (5th Cir.2006). Defendants in this case do not meaningfully contend actual fraud in the pleadings. Rather, Defendants rely upon the second category of improper removals. As such, the threshold question is whether "there is no reasonable basis

---

[1] The parties further dispute whether Continental Underwriters was properly served and whether removal was proper in light of purportedly improper service. The Court declines to address this issue in light of two overarching principles that preclude remand: the complete diversity of proper defendant, CRC, and Continental Underwriters' improper joinder.

5

for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id*. citing *Smallwood, supra.* In deciding whether a party was improperly joined, the court must resolve all contested factual issues and ambiguities of state law in favor of the plaintiff. *Id*. citing *Guillory v. PPG Indus., Inc.,* 434 F.3d 303, 308 (5th Cir.2005).

While the court has discretion to "pierce the pleadings and consider summary judgment-type evidence in the record" in determining whether joinder was improper, it "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *McKee v. Kan. City S. Ry. Co*., 358 F.3d 329, 334 (5th Cir.2004) (citing *Travis,* 326 F.3d at 648-49.). Thus, "although the type of inquiry into the evidence is similar to the summary judgment inquiry, the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard." *Id.* Any contested issues of fact and any ambiguities of state law must be resolved in the plaintiff's favor. *Id*. The Court "must also take into account the 'status of discovery' and consider what opportunity the plaintiff has had to develop its claims against the non-diverse defendant." *Id.* at 334-36; *see also Travis*, 326 F.3d at 650-51 (noting that when discovery was ongoing "simply pointing to the plaintiff's lack of evidence at stage of the case is insufficient" to establish improper joinder). At this stage of the litigation the plaintiff is not expected to produce evidence sufficient to survive a

motion for summary judgment; he must only show a "reasonable basis for the [] court to predict that the plaintiff might be able to recover." *Smallwood*, 385 F.3d at 573; *see also Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308–09 (5th Cir.2005) (explaining "[w]e do not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff might do so").

Plaintiff asserts claims against Continental Underwriters for breach of an insurance agreement in which Continental allegedly assumed 50% of the risk for 50% of the premiums. Plaintiff attached a Subscription Endorsement from Mitsui Sumitomo Marine Management (USA) identifying Mitsui Sumitomo Insurance USA, Inc. and US Specialty Insurance company through Continental Underwriters Ltd LLC as subscribing underwriters, each insuring 50%. (Rec. Doc. 14-2, p. 3). The declarations page likewise identifies the insurers as Mitsui Sumitomo Marine and "US Specialty Ins./Continental UW." (Rec. Doc. 14-2, p. 6). Plaintiff also provided the affidavit of its insurance broker, Dwight Andrus, IV, wherein Mr. Andrus attests that in March 2022 Continental Underwriters agreed to take 50% of the risk for 50% of the premium and that Continental Underwriters issued its own policy number to reflect its acceptance. (Rec. Doc. 14-2, p. 9, ¶7-9).

The removing Defendants counter that neither Continental Underwriters nor CRC are insurance companies. Rather, these companies are producer agents. (Rec.

7

Doc. 26-5, ¶6-10). Insurance is a highly regulated industry. Under Louisiana's Insurance Code, "insurance" is defined as a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies. La. Stat. Ann. § 22:46(13)(a). An "insurer" includes every person engaged in the business of making contracts of insurance, a reciprocal, an inter-insurance exchange, insurance exchange syndicate, or a Lloyds organization is an "insurer." La. Stat. Ann. § 22:46(14). Two or more "authorized insurers," those duly licensed and certificated under the Insurance Code (La. R.S. 22:46(3)), may jointly issue, and shall be jointly and severally liable on, an underwriters' policy bearing their names, and any one insurer may issue policies in the name of an underwriter's department and such policies shall plainly show the true name of the insurer. La. Stat. Ann. § 22:872(A).

"Insurance producer" or "producer" is a person required to be licensed under the Insurance Code to sell, solicit, or negotiate insurance, and includes all persons or business entities otherwise referred to as "insurance agent" or "agent," or "insurance broker" or "broker," or "insurance solicitor" or "solicitor," or "surplus lines broker." La. Stat. Ann. § 22:1542(6). Insurers and producers are distinct players in the game of insurance. Insurers enter into contracts of insurance with insureds; producers do not. Producers are the intermediaries between insurers and insureds

assisting in the procurement of needed coverage. An insured's claim for a covered loss is asserted against the insurer—the party to the insurance contract.

Continental Underwriters did not place, bind, issue, or underwrite the policy, issued in March 2022, by which time its assets and trade name had been sold to CRC. (Rec. Doc. 26-5, ¶12). CRC did not underwrite, subscribe, contract, issue, or incur responsibility for the policy. CRC functioned as a disclosed nonresident Producer Agent for US Specialty, which underwrote the policy. (Rec. Doc. 26-5, ¶13-16). Although CRC did bind the policy on behalf of US Specialty, the Court accepts CRC's explanation that US Specialty, an authorized insurer, engaged Continental Underwriters/CRC as a producing agent with the specialized knowledge and resources necessary to assess risks and bind marine policies. (Rec. Doc. 44, p. 18-19).

The Court finds that Defendants have met their burden of proving that Continental Underwriters/CRC did not underwrite the policy in question or assume the risks therein. Continental Underwriters/CRC's role was that of producer, while U.S. Specialty underwrote the policy and is therefore responsible for its share of risk obligations. Mr. Elder confirmed in email correspondence with Mr. Brown that the 50% risk would be written on U.S. Specialty paper (a term of art in the insurance industry). (Rec. Doc. 41; 41-4). See also affidavit of Jacqueline Nolan, senior claims specialist of Mitsui, who attested that Mitsui is the lead insurer of the policy and that

US Specialty is a 50% subscribing Insurer. (Rec. Doc. 26-4, ¶5-6). Further Mitsui was solely obligated to adjust claims under the policy. (Rec. Doc. 26-4, ¶8; Rec. Doc. 40-2). That a Continental Underwriters/CRC representative participated in some phone calls regarding the claim in question (see Rec. Doc. 42-1, ¶12-13) does not negate Mitsui's role as the responsible adjuster or otherwise impose liability on Continental Underwriters/CRC.

In light of Defendants' evidence, consisting of Continental Underwriters' own representative's, Mr. Brown's, affidavit regarding his company's role, the Court is not persuaded by the policy's reference to "US Specialty Insurance Company through Continental Underwriters Ltd LLC." Nor is the Court persuaded by Plaintiff's reliance upon the affidavits of its own broker, Dwight Andrus, IV, who attests that he negotiated with Mr. Brown for Continental Underwriters to take 50% of the risk. (Rec. Doc. 14-2, p. 9). Mr. Brown, possessing personal knowledge of his company's relationship with the involved underwriters, more persuasively attests to Continental/CRC's role as a producer agency rather than as insurer. (Rec. Doc. 26-5). Indeed, Mr. Andrus admitted in his supplemental declaration that he was not privy to the details of the arrangement between US Specialty and Continental Underwriters. Mr. Andrus attests merely to his "impression" based on his email communications with Mr. Brown. (Rec. Doc. 42-1, ¶11). Mr. Andrus's email correspondence with Mr. Brown upon which Plaintiff relies does not undermine

10

Continental/CRC's status as that of producer rather than insurer or underwriter subject to liability for claims made under the policy. Neither does Mr. Brown's use of universal pronouns (e.g. "We can agree to a 50% line… We would like to see a separate, higher deductible…" Rec. Doc. 14-2, p. 17-18) in the email correspondence implicate Continental Underwriters/CRC as an insurer or underwriter who assumed the liability risk. Finally, the fact that Continental/CRC issued its own number for administrative purposes does not render it an insurer, regardless of whether the number is defined as a call number or policy number.

Plaintiff did not allege any facts purporting to show that Continental Underwriters/CRC breached any duty in its capacity as producing agent of the policy. Plaintiff's claims are for payment of claims under the policy and related bad faith damages applicable only to insurers. Thus, the Court finds that Continental Underwriters is an improper defendant. The remaining defendants being diverse, subject matter jurisdiction is proper.

## Conclusion

For the reasons discussed herein, the Court recommends that Plaintiff's Motion to Remand (Rec. Doc. 14) be denied and that Plaintiff's claims against Continental Underwriters be dismissed.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this

report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 5th day of April, 2023.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE