UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**RIGID CONSTRUCTORS LLC**         **CASE NO.  6:22-CV-06234**

**VERSUS**                          **JUDGE ROBERT R. SUMMERHAYS**

**MITSUI SUMITOMO MARINE MANAGEMENT USA INC ET AL**     **MAGISTRATE JUDGE CAROL B. WHITEHURST**

## MEMORANDUM RULING

Before the Court is Rigid's Motion to Compel against Mitsui Sumitomo Marine Management (USA), Inc. and Mitsui Sumitomo Insurance USA, Inc. (collectively "Mitsui") (Rec. Doc. 116), which both U.S. Specialty Ins. Co. ("USSIC") and Mitsui opposed (Rec. Doc. 125 and 126). The Court previously deferred ruling on the motion pending in-camera review of Mitsui's withheld documents. (Rec. Doc. 135). The Court has reviewed the submitted documents and Mitsui's privilege log (Rec. Doc. 116-5). Rigid contests Mitsui's withholding of two categories of documents: 1) communications between subrogation counsel (attorneys at Liskow and Lewis) and Mitsui representatives; and 2) communications between Mitsui and USSIC representatives.

The bulk of the contested documents consists of emails among the following: William Schwartz and Jill Willhoft (Liskow & Lewis attorneys), Claurisse Campanale, Jacqueline Nolan, and Brian Sales (Mitsui claims representatives), and

Kelly Wolz and Alisa Radler (claims representatives for Fidelis Group, third-party claims administrator handling Rigid's claim on behalf of USSIC). (See Rec. Doc. 125-4). Mitsui withheld the emails and other documents as protected by the attorney-client, work product, and common interest privileges.

### I. Attorney-Client and Common Interest Privileges

In this diversity case, Louisiana provides the applicable law of privilege. *Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 381 (5th Cir. 2014). Fed.R.Evid. 501. The Louisiana attorney-client privilege, codified in Article 506 of the Louisiana Code of Evidence, provides:

> A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is:
>
> (1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer.
>
> (2) Between the lawyer and a representative of the lawyer.
>
> (3) By the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party concerning a matter of common interest.
>
> (4) Between representatives of the client or between the client and a representative of the client.
>
> (5) Among lawyers and their representatives representing the same client.

      (6) Between representatives of the client's lawyer.

La.Code Evid. art. 506(B).

    Art. 506(C)(5) provides a relevant exception in that no privilege exists for communication "[w]hich is relevant to a matter of common interest between or among two or more clients if the communication was made by any of them or their representative to a lawyer or his representative retained or consulted in common, when subsequently offered by one client against the other in a civil action."

    "The party seeking to assert the attorney-client privilege has the burden of proving that the privilege is applicable." *Zydeco's II, LLC v. Certain Underwriters at Lloyd's, London*, 18-604 (La. App. 5 Cir. 2/19/19).

## II.    <u>Mitsui Emails with Subrogation Counsel.</u>

    Mitsui contends that emails between the Liskow attorneys and the insurers' representatives are protected by the attorney-client privilege, because the Liskow attorneys were only retained as Mitsui's subrogation counsel—not as counsel to represent Rigid on its insurance claims arising from the casualty. Rigid argues that Mitsui retained Liskow to represent Rigid, as well as Mitsui, and that the attorney-client privilege cannot shield a client from his attorney's communications regarding his interests. The arguments raise several questions: 1) Did an attorney-client relationship exist between the Liskow attorneys and Rigid? 2) If so, was Liskow's representation limited to subrogation only? 3) What effect, if any, does a limited

scope of representation have on the attorney-client privilege? Ordinarily, as the party invoking the privilege, Mitsui would bear the burden; however, Rigid carries the burden to show the existence of an attorney client-relationship between itself and the Liskow lawyers. See *Saussy v. Bonin*, 2012-1755 (La. App. 4 Cir. 9/4/13), 125 So. 3d 1, 5, *writ denied,* 2013-2365 (La. 12/6/13), 129 So. 3d 537. Absent an attorney-client relationship, Rigid's position fails.

### A. Did the Liskow attorneys represent Rigid?

Mitsui admits "that it originally contemplated that Mr. Schwartz would represent the interests of both Rigid and Mitsui as it relates to the anticipated claim against LA Carriers," (Rec. Doc. 126, p. 3), but it contends that Rigid was already represented by Mr. Breaud, suggesting that Liskow's representation was thus automatically limited to Mitsui. Under Louisiana law, the attorney-client relationship is generally determined based upon the client's perspective:

> The existence of an attorney-client relationship turns not only on continuous contacts involving advice or service, but also on the client's subjective belief that such a relationship exists. However, the client's belief that an attorney represents him must be reasonable under the circumstances. The requirement that the belief be reasonable is an objective standard. The claimant's subjective belief does not establish an attorney-client relationship unless the lawyer reasonably induced that belief. The existence of the attorney-client relationship is a question of fact.

*Pearce v. Lagarde*, 2020-1224 (La. App. 1 Cir. 10/7/21), 330 So. 3d 1160, 1168, *writ denied,* 2022-00010 (La. 2/22/22), 333 So. 3d 446 (cleaned up; citations omitted).

Importantly, "a person's subjective belief that an attorney represents him must be reasonable under the circumstances and must have been induced by the attorney." *O'Dwyer v. Metairie Towers Condo. Ass'n Bd. President,* 24-277 (La. App. 5 Cir. 1/29/25), citing *Murphy v. MKS Plastics, L.L.C.*, 19-1485 (La. App. 1 Cir. 9/21/20), 314 So.3d 65, 71, *writ denied*, 20-1225 (La. 12/22/20), 307 So.3d 1041. "For this reason, an attorney-client relationship cannot exist in the absence of some initial communication – verbal, written, or otherwise – between the attorney and the client." *Id; Lirette v. Roe,* 93–0441 (La.App. 4 Cir. 1/13/94), 631 So.2d 503 631 So.2d 503, 506. Thus, Louisiana courts have refused to recognize implied attorney client relationships. *O'Dwyer, supra*; *Barkerding v. Whittaker*, 2018-0415 (La. App. 4 Cir. 12/28/18), 263 So. 3d 1170, 1183–86, *writ denied,* 2019-0166 (La. 4/8/19), 267 So. 3d 607; *Williams v. Roberts*, 2006-169 (La. App. 3 Cir. 5/31/06), 931 So. 2d 1217, 1220, *writ denied,* 2006-1780 (La. 11/9/06), 941 So. 2d 41; *Francois v. Andry*, 2005-0388 (La. App. 4 Cir. 4/5/06), 930 So. 2d 995, 998.

Internal communications revealed in the Mitsui claims file show that Mitsui had retained Liskow to represent Rigid's interests by June 17, 2022. (Rec. Doc. 116-6, presumably from the Mitsui claims file, email correspondence among Mitsui

5

representatives in which Campanale states that "We have retained counsel to protect our Insured's interests[.]") Although Mitsui admits the Liskow attorneys were initially hired to represent both Rigid and Mitsui, the evidence is unclear as to whether an attorney-client relationship was established. The record is devoid of any letter of engagement, any evidence of communication between Rigid and the Liskow attorneys, and any evidence that Rigid subjectively believed (in an objectively reasonable way) that the Liskow attorneys represented its interests. Mr. Schwartz declared that he "did not advise Rigid that [he] was acting as their attorney." (Rec. Doc. 126-3, ¶7). Rigid submitted various emails between Mr. Breaud and the Liskow attorneys which show all counsel working together on the initial investigation as to how the barges sank and the extent to which LA Carriers was at fault (e.g. Rec. Doc. 116-8 through 116-12), but these emails do not show that the Liskow attorneys established a client relationship with Rigid or communicated in such a way that Rigid could have reasonably believed Liskow was its attorney. Rather, the evidence presented to the Court and the parties' arguments suggest that Rigid's first indication that Mitsui had retained Liskow to represent its (Rigid's) interests appeared in the Mitsui claim file, which Rigid received after the matter had already been re-assigned based on Mitsui's denial of coverage.

The absence of a clear termination of any purported attorney-client relationship further supports that an attorney-client relationship did not exist between Rigid and Liskow. Campanale testified:

> Q. Did you retain Mr. Schwartz also to represent the interest of Rigid?
>
> A. Initially I did but then was told that Rigid had hired its own counsel.
>
> Q. So at that point did you advise anybody that you were withdrawing Mr. Schwartz from representing the interests of Rigid?
>
> [Objection to form.]
>
> A. I don't believe I specifically did that, no.

(Rec. Doc. 116-3, p. 2-3).

The Court finds no evidence supporting that Rigid had an objectively reasonable belief that the Liskow attorneys represented it. At best, Mitsui's initial hiring of Liskow to represent Rigid was perhaps one akin to an implied relationship. But without evidence of express communication between Liskow and Rigid that could reasonably induce Rigid to believe that Liskow represented it, Louisiana courts would unlikely recognize Rigid's relationship with Liskow as an enforceable attorney-client relationship.

### B. What was the scope of any purported privilege?

In the absence of an attorney-client relationship as between Liskow and Rigid, the analysis ends; however, for the sake of any future review, the Court offers additional analysis regarding the scope of any purported privilege. Although the

7

redacted emails are primarily related to subrogation issues (e.g. investigation of facts and potential liability of LA Carriers), certain comments between the Liskow attorneys and Mitsui representatives discuss other matters, including coverage. If Rigid and Liksow had an attorney-client relationship (which the Court expressly rejects), would Rigid be entitled to discover non-subrogation-related communications?

The attorney-client privilege protects only communications made for the purpose of facilitating the rendition of professional legal services to the client. La. C.E. art. 506. Louisiana law recognizes that the scope of a lawyer's representation may be limited. See Louisiana Rule of Professional Conduct, Rule 1.2(c).[1] Logically then, the attorney-client privilege in a case of limited representation is likewise limited to communications within the scope of representation.

The submitted evidence shows that Campanale, on behalf of Mitsui, initially retained the Liskow attorneys to represent Rigid and Mitsui in the investigation and

---

[1] Under Rule 1.2, "[a] lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent." The evidence shows that scope of Liskow's representation—subrogation—was reasonable, and that Rigid was represented by other counsel on other issues. Less obvious is whether Rigid gave informed consent, but the Court need not resolve the issue here. The Rules of Professional Conduct do not form the basis for independent liability (see discussion in *Teague v. St. Paul Fire & Marine Ins. Co.,* 2006-1266 (La. App. 1 Cir. 4/7/09), 10 So. 3d 806, 825, *writ denied,* 2009-1030 (La. 6/17/09), 10 So. 3d 722). Hence, and considering that La. C.E. art. 506 provides a more specific privilege rule concerning clients with common interests, Rule 1.2 should not be used in determining the scope of the attorney-client privilege in this case.

possible pursuit of a subrogation claim against the barge towing company, LA Carriers, LLC. Mr. Schwartz's declaration states that he was retained on June 15, 2022 "to represent Mitsui in an anticipated subrogation litigation against LA Carriers[.]" (Rec. Doc. 126-3, ¶6). The declaration states that the Liskow attorneys did not represent Rigid "as it relates to the AMBITION casualty." (¶7). Nor did Liskow handle any coverage issue. (Rec. Doc. 126-3, ¶6). Rigid presented no counter evidence showing that Mitsui was hired to represent Rigid on any matter other than a possible subrogation claim against the tow company.

Under La. C.E. art. 506(B)(3), a privilege exists for communications by the client or his lawyer to a lawyer or representative who represents another party concerning a matter of common interest. This common interest privilege theoretically protects both Mitsui and Rigid (assuming an attorney-client relationship for purposes of this analysis) from compelled disclosure to third parties of communications regarding subrogation. However, no privilege exists for communication "[w]hich is relevant to a matter of common interest between or among two or more clients if the communication was made by any of them or their representative to a lawyer or his representative retained or consulted in common, when subsequently offered by one client against the other in a civil action." La. C.E. art. 506(C)(5). Thus, in this case of Rigid versus Mitsui, Rigid (when assumed to be

9

Liskow's client) is entitled to communications on the matter of subrogation between Liskow and Mitsui.

Subrogation is a matter of common interest—coverage is not. Rigid is not entitled to communications between the Liskow attorneys and Mitsui insofar as they discuss coverage or any issue unrelated to the putative subrogation claim. This conclusion is consistent with decisions in analogous cases.[2]

In *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.,* the court noted that under the common interest doctrine, "communications between an insured and its attorney connected with the defense of underlying litigation are normally not privileged vis-a-vis the insured's carriers in subsequent litigation." *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.,* 654 F. Supp. 1334, 1365 (D.D.C.), *on reconsideration,* 672 F. Supp. 1 (D.D.C. 1986), and *aff'd,* 944 F.2d 940 (D.C. Cir. 1991), citing *Eureka Investment Corp. v. Chicago Title Ins. Co.,* 743 F.2d 932, 936–37 (D.C.Cir.1984). Similar to the instant case, in *Indep. Petro. Corp.*, following settlement of an underlying tort claim, the insured sued the insurer seeking coverage under its policies. The insurer moved to compel communications between the insured and its attorneys in the underlying claims. The court held that the insurer and

---

[2] The analogous cases analyze privilege under the federal common interest doctrine. Louisiana law and federal law are materially similar regarding privilege. *Soriano v. Treasure Chest Casino, Inc.*, No. 95–3945, 1996 WL 736962, at *2 (E.D. La. Dec. 23, 1996); *Firefighters' Ret. Sys. v. Citco Grp. Ltd.,* No. CV 13-373-SDD-EWD, 2018 WL 305604, at *5 (M.D. La. Jan. 5, 2018).

insured's common interest in defending the underlying claims justified disclosure of otherwise privileged communications between the insured and its attorneys, but only to the extent the communications involved the underlying claims. Any communications between the insured and its attorneys regarding the coverage dispute remained protected. *Id*. at 1365-66. Accord *Fugro-McClelland Marine Geosciences, Inc. v. Steadfast Ins. Co.,* No. CIV.A. H-07-1731, 2008 WL 5273304, at *2–3 (S.D. Tex. Dec. 19, 2008); *Eureka Invest. Corp.. v. Chicago Title Ins. Co.,* 743 F.2d 932 (D.C.Cir.1984) and *Southeastern Penn. Transp. Auth. v. Transit Cas. Co.,* 55 F.R.D. 553, 556 (E.D.Pa.1972).

Mitsui cites *Seacoast 5151 Condo. Ass'n v. Great Am. Ins. Co. of New York* for the proposition that "records concerning subrogation counsel were not relevant in insurance coverage dispute and therefore did not need to be produced." (Rec. Doc. 126). *Seacoast* is distinguishable insofar as the insurer's subrogation attorney in that case was not retained to represent the insured and the subrogation issue in that case was unrelated to the plaintiff's claims. *Seacoast 5151 Condo. Ass'n v. Great Am. Ins. Co. of New York*, No. 17-23820-CIV, 2018 WL 6653342, at *5 (S.D. Fla. Sept. 21, 2018), *report and recommendation adopted,* No. 17-23820-CIV, 2018 WL 6653071 (S.D. Fla. Nov. 6, 2018). The Court finds that even if an attorney-client relationship existed between Rigid and Liskow (which the Court expressly finds does not), Rigid would not be entitled to non-subrogation-related communications.

### III. Emails between Mitsui and USSIC representatives.

Beyond its communications with the Liskow attorneys, Mitsui also withheld its representatives' communications with USSIC representatives. Mitsui and USSIC (through a third-party producing agent) co-underwrote Rigid's primary policy, each with a 50% interest. (See the Court's detailed discussion regarding Mitsui and USSIC's relationship in Rec. Doc. 53).

Mitsui and USSIC object to producing internal communications concerning advice and communications from the Liskow attorneys. Rigid contends that emails between insurer representatives, which do not include an attorney, are not protected. Under the common interest doctrine, discussed above, Mitsui and USSIC have a common interest insofar as they co-underwrote the primary policy. The emails among Campanale, Radler, and other representatives which Mitsui provided for the Court's review either involve direct communication with a Liskow attorney or otherwise concern Liskow communications and advice. The Court finds that these emails are privileged. See *Exxon Corp. v. St. Paul Fire & Marine Ins.,* 903 F. Supp. 1007, 1010 (E.D. La. 1995) (holding that primary and excess insurers' privileged communications were protected from disclosure, because excess insurers were not disinterested third parties but entities with common interests).

For the foregoing reasons, the Court denies Rigid Constructor, LLC's Motion to Compel (Rec. Doc. 116) insofar as it seeks to compel production of the documents addressed herein.

Signed at Lafayette, Louisiana on this 4th day of April, 2025.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE